**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| SHANNON HYLAND, as assignee of MIQUASHA SMITH, | |
| Plaintiff, | Case No. 1:15-cv-01264-JES-JEH |
| v. | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | |
| Defendant. | |

## ORDER AND OPINION

Now before the Court is the Plaintiff, Shannon Hyland's, Motion for Summary Judgment (Doc. 19), and the Defendant, Liberty Mutual Fire Insurance Company's ("Liberty Mutual"), Motion for Partial Summary Judgment on Damages (Doc. 20). The Motions are fully briefed. For the reasons stated below, the Plaintiff's Motion for Summary Judgment is GRANTED and the Defendant's Motion for Summary Judgment is DENIED.

### Background

The following facts are undisputed. On August 3, 2013, a 2004 Pontiac Grand Prix was involved in a one-car accident in in Peoria, Illinois. The vehicle was insured by Kimberly Perkins through the Defendant, Liberty Mutual, from June 29, 2013 to May 11, 2014; the policy also included Michiah Risby, Perkins's daughter. However, during the accident, the driver of that car was Miquasha Smith. Monteil Hyland was a passenger in that car during the August 3, 2013 accident. Hyland was severely injured. Monteil Hyland's mother, Shannon Hyland, filed suit in Peoria County against Smith, the driver, for negligence in *Hyland vs. Smith*, No. 13 L 220.

*1. The Accident*

On the night of August 2, 2013, Risby drove the car to a party in Peoria. Her friend wanted to leave, but Risby did not. Somehow, Smith obtained the keys to the car and dropped off the friend, with another person in the car. Risby maintained that she did not give Smith permission, but Smith stated that she had permission to drive the car. After dropping off the friend, Smith picked up two additional passengers. One of those passengers was Monteil Hyland. Smith crashed the car into a curb and two legally parked cars at 12:46 a.m. on August 3, 2013. The passengers were injured, and Monteil Hyland suffered a severe traumatic brain injury.

The Peoria Police Department prepared a crash report. Smith received 12 traffic citations. She was 16-years-old and therefore had a restricted driver's license; she was driving after curfew and had more under-aged passengers in the car than was allowed. The police reported that Smith's version of the events "continue to change." Doc. 20, p. 9. Smith's family did not have a car or car insurance.

*2. The Insurance Investigation*

The 2004 Pontiac Grand Prix is a "covered auto" listed in the Policy's Declarations; the Policy provides liability coverage for bodily injury with a $25,000 limit per person. Kanisha Scott, Miquasha Smith's mother, submitted a copy of the lawsuit to Liberty Mutual on August 15, 2013. She informed Liberty Mutual that she was sued by Hyland. She was asked if she drove the car with permission, for which she responded that she did. Heather Duehlmeyer, an employee of Liberty Mutual, referred the Hyland Complaint against Smith to an attorney working for Liberty Mutual on August 22, 2013.[1] Liberty Mutual investigated the claim.

---

[1] Parties dispute whether it was forwarded to in-house attorneys for defense (Doc. 19, p. 5, ¶ 8), or Liberty Mutual's Legal Staff, the Law Offices of Lawrence Cozzi (Doc. 22, p. 7, ¶ 8).

Liberty Mutual claims they received a call from Perkins and relayed the information that her daughter "adamantly states that she did not give her permission for anyone to use vehicle." Doc. 20, p. 10. Liberty Mutual took recorded statements from both Miquasha Smith, and Michiah Risby and Kimberly Perkins together. Smith, the driver during the crash, and Risby, the named insured, gave conflicting statements to Liberty Mutual on the issue of whether Risby gave Smith permission to drive the car that evening. According to Smith, Risby gave her permission to drive the car and gave her the keys. According to Risby, when Smith asked if she could drive the car, Risby told her she could not. Instead, Risby gave the keys to a person named "Rob." Liberty Mutual did not take a statement from "Rob." Based upon the statements from Smith and Risby, Liberty Mutual denied coverage because it concluded that Smith was a non-permissive driver.

Robyn Brown from Liberty Mutual authored a coverage referral form, concluding that Smith was not credible and Smith did not have permission to drive the insured vehicle. Therefore, Smith was not covered under the policy. The form did not discuss the duty to defend. Michael Schlegel from Liberty Mutual made the final decision to deny coverage. In making this determination, Schelgel testified that he also looked to the following: "The credibility of those parties or the apparent credibility based on those who spoke with them and the police report." After this decision was made, Schlegel advised Robyn Brown to send a denial letter to the Plaintiff's attorney and inform the insured that Liberty Mutual will not be defending her. After confirming that the named insureds were not named in the lawsuit, she advised that the file should be closed. Brown then sent a denial letter to counsel for Shannon Hyland on September 23, 2013.

*3. The Peoria County Awards*

Shannon Hyland, individually and as next friend of Monteil Hyland, filed suit against Smith in the Circuit Court of the Tenth Judicial Circuit of Illinois, Peoria County. The Complaint was silent on whether Smith had permission to use the car or whether Smith had a reasonable belief that she was entitled to use the car. On September 23, 2013, Liberty Mutual notified counsel for Smith and Hyland that it was denying coverage for Smith. Liberty Mutual explained the following:

> It is our understanding that, at the time of the accident, our insured nor her daughter Michiah Risby gave permission to Miquasha Smith to drive the vehicle. Accordingly, she could not have had a reasonable belief that she was entitled to drive the vehicle. Therefore, Exclusion A.8 applies to bar liability coverage for the accident.

Doc. 20, p. 14.[2] Liberty Mutual, in a letter from claims specialist Robyn Brown, also stated "If you have any information you believe may affect Liberty's coverage determination, please bring it to my attention immediately." Doc. 20-5, p. 12. Neither Smith nor her counsel ever provided Liberty Mutual with contrary information.

On December 11, 2013, the Peoria County Circuit Court approved an uninsured motorist settlement between Shannon Hyland and Progressive Insurance.[3] On December 11, 2013, counsel for Hyland sent a certified letter to Brown with a copy of the lawsuit. The letter stated the following: "This office will proceed to a prove up of judgment against Miquasha A. Smith and issue supplementary process to Liberty Mutual Insurance Company concerning coverage of

---

[2] Exclusion A.8 under the Policy is the following:
      A. We do not provide Liability Coverage for any "insured":
                8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.
Doc. 20, p. 7.
[3] The Hylands received $100,000 in uninsured motorist insurance coverage from their insurance company, Progressive.

the vehicle in question." Robert Feldhaus from the Claims Department sent a letter stating the following:

> Based on our investigation of this claim we have determined there is no liability coverage for Miquasha Smith as she was specifically denied permissive use of the vehicle involved in the loss. Therefore we will not be affording liability coverage or a defense for Miquasha Smith.

Doc. 19-10. When asked if he separately analyzed the duty to defend from the duty to indemnify, he testified that he views duty to defend and duty to indemnify as the same. Doc. 19-12, p. 37. Robyn Brown of Liberty Mutual testified to the same. Doc. 19-11, p. 36-37. The Defendant argues that this statement is immaterial to the duty to defend issue.

Liberty Mutual, relying on the statements of their insured and determining Smith was not credible, did not provide an attorney, and no attorney from Liberty Mutual made an appearance or took any other action in the personal injury lawsuit. See Doc. 20-2, p. 59-60 (Smith stating that Risby gave her permission to drive the car); Doc. 20-2, p. 45 (Perkins and Risby stating that Smith did not have permission). Smith never retained her own attorney, and on the record at the hearing, stated that she represented herself. Smith never again contacted Liberty Mutual.

Smith offered no evidence at the hearing. The court found her liable and entered judgment in favor of Hyland and against Smith. Counsel for Hyland informed Liberty Mutual that he intended to seek a default. The Plaintiff never made a demand to Liberty Mutual to settle. The Plaintiff filed a Motion to Prove up Default Judgment and Damages and noticed the hearing for June 26, 2014. The hearing on default was held in Peoria County on June 26, 2014 and July 8, 2014. Importantly for the instant case, Liberty Mutual did not provide a defense for Smith in the Peoria County case. Nor did Liberty Mutual file a declaratory judgment action seeking a determination on the issue of the duty to defend or the duty to insure. No one appeared in the defense of Defendant Miquasha Smith. A judgment order was entered on July 28, 2014 by Judge

Stephen Kouri in favor of the Plaintiff and against Miquasha Smith for $4,594,933.85. Smith assigned Hyland any claims against Liberty Mutual for failure to defend Smith in the Peoria County case.[4]

The Plaintiff objects to a number of the Defendant's facts pertaining to the issue of permission. Generally, the Plaintiff's objection is that the permissive use issue is not material to the Motions before the Court. However, the Plaintiff concedes that these facts may be material to the argument that Liberty Mutual had the option of pursuing a declaratory judgment instead of defending Smith.

## Procedural History

On June 26, 2015, Plaintiff Shannon Hyland filed a Complaint in this Court against Defendant Liberty Mutual for breach of insurance contract and duty to defend. The Complaint does not contain any allegations of bad faith or tortious conduct against Liberty Mutual. According to the Plaintiff, the Defendant had a duty to defend Miquasha Smith in the Peoria County case where she was driving an automobile belonging to the named insureds. The Plaintiff argues that Liberty Mutual owed a duty to defend Smith in the underlying lawsuit and breached that duty by failing to defend Smith or defend Smith under a reservation of rights, or file a declaratory judgment action regarding its duty to defend or indemnify. The Plaintiff argues that the underlying personal injury lawsuit made no reference to the issue of permission. The Plaintiff alleges that as a direct and proximate result of this breach of duty, a judgment has been entered against Miquasha Smith in the amount of $4,594,933.85.

---

[4] Smith pleaded guilty to one count of aggravated reckless driving, and received 45 days in jail and 30 months of probation. She hired an attorney to represent her in the criminal proceedings.

The Plaintiff filed a Motion for Summary Judgment on January 31, 2017. In response, the Defendant filed a Motion for Partial Summary Judgment on Damages (Doc. 20) on January 31, 2017, arguing that the policy liability coverage should be limited to $25,000 for each person. In making that argument, the Defendant points to its Policy covering the vehicle in question, argues that Hyland did not allege bad faith, argues that Smith did not incur out-of-pocket expenses, and argues that their refusal to defend did not cause the default judgment. Further, the Defendant argues that the more than $4.5 million judgment would be an impermissible windfall because it is far beyond the $25,000 that Smith would be entitled to had the Defendant not breached the contract. The Motions are fully briefed. This order follows.

**Legal Standard**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A material fact is one that might affect the outcome of the suit. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 588. Any disputed issues of fact are resolved against the moving party. *GE v. Joiner*, 552 U.S. 136, 143 (1997). The moving party has the responsibility of informing the Court of portions of

the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp.*, 477 U.S. at 323. Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Id.* at 324. Where a proposed statement of fact is supported by the record and not adequately rebutted, a court will accept that statement as true for purposes of summary judgment; an adequate rebuttal requires a citation to specific support in the record. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Further, the "interpretation of an insurance policy is a matter of state law." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015). In Illinois, "an insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Id.*, citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill.2d 11, 17, 291 Ill. Dec. 269, 823 N.E.2d 561 (2005).

## Analysis

### I. The Duty to Defend

When an insurer receives notice of suit against its insured, it must determine its course of action from the following options: 1) defend without reservation, 2) defend while reserving its rights, 3) seek a declaratory judgment concerning the scope of coverage, or 4) decline to defend—such as when the allegations in the complaint fall outside the scope of the insurance policy—but at its peril. *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 880 (7th Cir. 2017).

In Illinois, "an insurer's duty to defend is much broader than its duty to indemnify." *Id.* at 883, quoting *Landmark American Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). Therefore an insurer may have the duty to defend even if ultimately, there will be no obligation to indemnify. The duty to defend "is determined by comparing the allegations in the underlying complaint to the policy at issue," and when "the allegations in the underlying complaint fall within, or potentially fall within, the policy's coverage." *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, No. 16-1439, 2017 WL 2979654, at *3 (7th Cir. July 13, 2017); citing *Taco bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1073 (7th Cir. 2004). Sometimes, an insurer must determine whether it will defend claims against its insured "before it has time to investigate all the relevant facts." *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 883 (7th Cir. 2017).

The underlying complaint and insurance policies are liberally construed in favor of the insured. *Id.* This also includes instances where the allegations are "groundless, false, or fraudulent." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352, 307 Ill. Dec. 653, 860 N.E.2d 307, 315 (2006). Illinois courts compare the underlying complaint with the insurance policy "to determine whether facts alleged in the underlying complaint fall within or potentially within coverage," known as the "eight corners" rule. *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 883 (7th Cir. 2017), citing *American Alternative Ins. Corp. v. Metro Paramedic Services, Inc.*, 829 F.3d 509, 513-14 (7th Cir. 2016) (internal quotations omitted).

The Plaintiff argues that based upon the allegations in the underlying complaint and the insurance policy, the Liberty Mutual had a duty to defend Miquahsa Smith, the driver of the car during the accident, and Liberty Mutual breached its duty to defend. The Plaintiff argues that

there is nothing in the underlying complaint that states or infers that Smith was a nonpermissive driver; therefore, the allegations in the complaint either fell within or potentially within the policy coverage. According to the Plaintiff, Liberty Mutual equated the duty to defend with the duty to indemnify and denied coverage based upon inconsistent evidence. Specifically, the Plaintiff contends that Liberty Mutual improperly relied upon the extraneous evidence—an accident report—and conflicting statements of the insured and the driver contesting whether Smith had permission to drive the car.

The Defendant replied with the following:

> Plaintiff focuses her brief on whether Liberty Mutual breached the duty to defend. Liberty mutual no longer contests that issue. (In fact, months ago it offered to settle this case for the $25,000 per-person limit.) This case is about the damages a putative additional insured can recover if the insurer erroneously – but not in bad faith – failed to defend. Liberty Mutual's response concentrates on this main issue.

Doc. 22, p. 17.

According to the Liberty Mutual Policy that covered Kimberly Perkins and Michiah Risby, Miquasha Smith could possibly fall within the policy as an "insured." The Policy states the following:

Part A -  Liability Coverage

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.
B. "Insured" as used in this Part means:
   1. You or any "family member" . . .
   2. Any person using "your covered auto".

Doc. 20-2, p. 9. The underlying personal injury case complaint (Doc. 19-2, Case No. 13 L 220) states that "Defendant Miquasha Smith drove her vehicle" and described the vehicle as "a 2004 Pontiac Grand Prix driven by Defendant Miquasha Smith." *Id.* at p. 1-2. The 2004 Pontiac Grand Prix involved in the accident was a "covered auto" listed in the Policy's Declarations. (Doc. 20, p. 6). It is undisputed that the lawsuit was silent on the issue of permissive use. Therefore, Miquasha Smith could have fallen within the policy into the "Any person using 'your covered auto'" category. Under "Exclusions", the Policy states that a person is not covered under the policy when:

> 8. Using a vehicle without a reasonable belief that the "insured" is entitled to do so. . . .

(Doc. 20-2, p. 10). Smith potentially fell within the policy coverage, triggering Liberty Mutual's duty to defend. *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, No. 16-1439, 2017 WL 2979654, at *3 (7th Cir. July 13, 2017). See also, *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 886 (7th Cir. 2017), citing *National American Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717 (7th Cir. 2017) ("The presence of a theory excluded from coverage does not excuse an insurer from its duty to defend its insured."). Moreover, the complaint and insurance policies are liberally construed in favor of the insured. *Title Industry*, 853 F.3d at 884. Liberty Mutual argues to great length that Risby was adamant she did not give Smith permission to drive her car; however, when faced with two separate and conflicting versions of events, the claim potentially fell within the Policy's coverage. Liberty Mutual took no further action after their investigation.

Because the Defendant does not contest the issue (Doc. 22, p. 17), and it is clear from the policy and complaint that the claim potentially fell within the policy, the Court will not spend

more analysis on the duty to defend. The Court will next address whether damages should be limited to the $25,000 policy limit.

## II.    Damages

The Liberty Mutual Policy provides liability coverage for bodily injury with a limit of $25,000 per person. (Doc. 20, p.7). In the Motion for Partial Summary Judgment on Damages (Doc. 20), Liberty Mutual argues that this case is about damages, and the damages for the breach of the duty to defend are limited to the amount the insured would have received under the policy. Liberty Mutual argues that where there is no bad faith, the insured is entitled to recover out-of-pocket defense costs and the limits of the policy. Also, according to Liberty Mutual, there was no bad faith where it handled the claim reasonably and thoroughly. In their Motion for Partial Summary Judgment on Damages (Doc. 20), the Defendant states the following: "Even if Liberty Mutual unjustifiably refused to defend Smith, which it does not concede and will address in opposition to Plaintiff's motion for summary judgment and at trial, Plaintiff's damages are $25,000, the per-person limit of the policy." Doc. 20, p. 6.[5] It contends that the evidence supported its conclusion that Smith did not have permission to drive the car and fell within the Policy Exclusion. Moreover, its refusal to provide a defense did not proximately cause the default judgment, because an attorney would not have affected Smith's action or inaction that lead to the default. Liberty Mutual further asserts that there were no out-of-pocket expenses. If the Plaintiff receives the entire judgment in excess of the Policy limit, it argues, it would place

[5] The Court interprets Liberty Mutual's argument—that it does not concede that their breach was unjustifiable—as part of its overall argument that there is no bad faith and it handled the claim reasonably. The argument would therefore pertain to the Parties' arguments on damages and not the duty to defend. Liberty Mutual previously stated that it does not contest that it breached the duty to defend. (Doc. 22, p. 17). Also, according to the Seventh Circuit, the breach is unjustifiable when the complaint alleges facts that potentially fall within coverage. See *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 885-86 (7th Cir. 2017).

the Plaintiff in a better position than she would have been had the contract been fully performed; also, to award the Plaintiff nearly $5 million would be an impermissible windfall.[6]

The Plaintiff argues that the damages should not be limited to the policy limits, but should be for the full amount of the default judgment award. The Plaintiff relies on the *Conway* and *Delatorre* cases in arguing that an insured may recover an excess judgment in a breach of the duty to defend case on a tort-based theory or a contract-based theory. *Conway v. Country Cas. Ins. Co.*, 92 Ill. 2d 388, 442 N.E.2d 245 (1982); *Delatorre v. Safeway Ins. Co.*, 2013 IL App (1st) 120852, 989 N.E.2d 268 (2013). Under either of these theories, the Plaintiff argues, the Plaintiff should prevail. Because Liberty Mutual wrongfully denied Smith a defense, the Plaintiff was led to announcing that it would pursue default and collect from Liberty Mutual, and proceeded with the hearing against Smith. Otherwise, the Plaintiff argues, the Hylands would have stopped pursuing the claim after they received uninsured motorist coverage from Progressive Insurance that Hyland had on her vehicle. Similarly, the Plaintiff argues that it would succeed under a tort law theory because Liberty Mutual equated the duty to defend with indemnification constituted negligence or bad faith. The Court will address the Parties' arguments in turn.

A.      Estoppel

When a court finds that an insurer breached its duty to defend, the insurer is estopped from asserting policy exclusions or defenses to coverage. *Chandler v. Doherty*, 299 Ill. App. 3d 797, 804, 702 N.E.2d 634, 639 (1998); *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 883 (7th Cir. 2017), citing *Edward T. Joyce & Associates, P.C. v. Professionals Direct Ins. Co.*, 816 F.3d 928, 932 (7th Cir. 2016) ("Under Illinois law 'an

---

[6] Liberty Mutual also makes the argument that its denial was reasonable because in Illinois, there is no reasonable belief that one is entitled to drive in the state without a valid license. Doc. 22, p. 31-32. However, whether Liberty Mutual's investigation and denial of coverage was reasonable is not part of the Court's analysis. Additionally, Smith had a restricted, not invalid, license.

insurer's duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract.' [Citations.] A breach of the duty to defend estops the insurer from raising policy defenses to coverage."); and *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1135 (Ill. 1999).

The insurer is also estopped from limiting damages to policy limits. In *Clemmons*, for example, a default judgment was entered against a driver in a car accident and the insurer breached its duty to defend. *Clemmons v. Travelers Ins. Co.*, 88 Ill. 2d 469, 430 N.E.2d 1104 (1981). In *Clemmons*, the insurer failed to defend the driver in circuit court when sued by the plaintiff for injuries from a car accident. The defendant insured the car involved in the accident. A default judgment was entered against the driver. The plaintiff sued the insurer for the judgment amount, and the circuit court granted summary judgment to the plaintiff. The court determined that the defendant insurance company's "failure to defend [the driver] estopped it from denying that its policy coverage extended to [the] accident." *Clemmons v. Travelers Ins. Co.*, 88 Ill. 2d 469, 472-73, 430 N.E.2d 1104, 1106 (1981).

The *Clemmons* case is analogous to the instant case; *Clemmons* involved a car accident where the car was owned by the American National Red Cross, and the driver was an employee of Red Cross. The insurer determined that the driver was driving "without permission and outside the scope of his employment and was therefore not covered by the policy." *Id.* at 473, 1106. The insurer denied liability and informed the plaintiff and the driver that it would not defend any suit against the driver.

In *Clemmons*, the Illinois Supreme Court ultimately determined that although the insurer used an unsworn accident report where the driver stated he did not have permission to drive the

car, the duty to defend arises solely from the language of the complaint and the policy. If there is a possibility that the driver had permission, that is, if the complaint alleges facts potentially within the coverage of the policy, then the insurer has the duty to defend. The court stated that the "accident report was not enough to dispel the potential for coverage raised by [the] complaint." *Id.* at 857, 1108. The court stated:

> If [Defendant] wanted to preserve its right to later contest permission, it had the choice of defending under a reservation of rights or seeking a declaratory judgment of no coverage. By doing neither, [Defendant] was estopped from later denying coverage when [Plaintiff], standing in [the driver]'s shoes, asked it to pay the judgment in the underlying suit.

*Id. at* 479, 1109. The Illinois Supreme Court expanded upon this, stating the following:

> The general rule of estoppel is equitable in nature. In this context, its roots lie in the theory that because the insurer breached one of its duties under the contract of insurance (of which the putative insured is an intended third-party beneficiary), the insurer cannot later turn around and enforce another clause of the contract, to its complete protection. [Citation.] The court will not enforce the insurer's protections under the policy where the insurer failed to act equitably, that is, failed to defend under a reservation of rights or to bring a declaratory judgment action to determine whether there was coverage under the policy. [Citation.] The circuit court was correct in finding [Defendant] estopped.

*Id.*

Here, Liberty Mutual is attempting to enforce its exclusion, although it breached one of its duties under the contract. The Illinois Supreme Court found that the insurer in *Clemmons* was estopped from enforcing a provision of the contract even where the accident report stated that the driver admitted that he did not have permission. Thus, there was stronger evidence in *Clemmons* than there is in the present case that the driver did not have permission. Here, Smith maintained that she had permission.

Similarly, in *Chandler*, a judgment was enforced and the insurer was estopped from arguing that the car was not insured because it breached its duty to defend. *Chandler v. Doherty*,

299 Ill. App. 3d 797, 801, 702 N.E.2d 634, 637 (1998). In the *Chandler* case, an individual had an accident in his modified car, known as a "replicar." The insurer of his other vehicles initially refused to insure the replicar because it was a modified vehicle, and he did not obtain coverage before the accident. The replicar owner was sued in a tort action by the plaintiff, who was injured in the accident. The insurer notified the parties that it would not provide coverage and did not file a declaratory judgment action, and did not defend the owner. The complaint in that case stated that the owner was driving his motor vehicle, which met the threshold of alleging potential coverage and triggered the duty to defend. A jury awarded the injured plaintiffs for over $1.6 million; the trial court entered judgment for the $300,000 policy limits plus interest on the entire judgment. The Illinois Appellate Court affirmed the judgment of the trial court against the insurer for the policy limit and interest on the total award. The court determined that the insurer was estopped from raising policy defenses—that the car was not insured—because it breached its duty to defend. *Id.* at 640, 805.

Lastly, the Seventh Circuit recently addressed a similar issue on the duty to defend issue in *Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876 (7th Cir. 2017). In *Title Industry*, the insurer declined to defend the insured and the cases against its insured continued for years. After one of the plaintiffs filed a fourth amended complaint, the insurer made an appearance and filed a declaratory judgement action in federal court and asked the federal court to find that coverage was unavailable due to two exclusions in the policy. The district court entered summary judgment in favor of the state court plaintiffs in the declaratory judgment action. The Seventh Circuit affirmed, determining that there was a possibility of coverage under the policy and complaint. The Court found that the complaint did not "compel the conclusion" that there was intentional wrongdoing that would place the insured outside the

policy. *Id.* at 887. The Court also limited its analysis of whether there was a breach of the duty to defend to the insurance policy and the underlying complaint, noting "absent unusual circumstances." *Id.* at 884. The Court cited to the following:

> Compare *Hilger*, 838 F.3d at 824 ("[W]hen an insurer tries to deny coverage *without* seeking a declaratory judgment *or* defending under a reservation of rights ... the relevant question is whether the insurer justifiably refused to defend the action based solely on the allegations in the complaint, so the court's inquiry is necessarily limited to those allegations."), with *Bartkowiak v. Underwriters at Lloyd's, London*, 395 Ill.Dec. 709, 39 N.E.3d 176, 179, 182 (2015) (trial court did not err in taking account of tortfeasor's primary insurance coverage that was not specifically referenced in underlying complaint or in defendant's policy but that was known to defendant at the time it denied coverage, was the basis for that denial, and was an objective, undisputed fact).

*Id.* at 884 (7th Cir. 2017).

The Court of Appeals emphasized that Illinois provides two options if an insurer is uncertain of its duty: 1) to defend under a reservation of rights, or 2) to seek a declaratory judgment that there is no coverage. *Id.* at 883. The Circuit Court reasoned that because the insurer breached its duty to defend, it was "therefore estopped from asserting at this very late stage any policy defenses to coverage that might have been available if [the insurer] had made a different choice when the complaints were first tendered." *Id.* at 880. The Court added that the insurer's "hasty abandonment of its Insured may cost it far more than it would have spent if it had simply honored its duty to defend." *Id.* at 892. Therefore, Illinois' law supports the Plaintiff's contention that Liberty Mutual is estopped from raising the Policy exclusion because Liberty Mutual breached the duty to defend.

### B. Damages

The Parties cite *Delatorre* and *Conway* in their arguments on damages. *Delatorre v. Safeway Ins. Co.*, 2013 IL App (1st) 120852, 989 N.E.2d 268 (2013); *Conway v. Country Cas. Ins. Co.*, 92 Ill. 2d 388, 442 N.E.2d 245 (1982). In *Conway*, the Illinois Supreme Court described

the two situations where an insurer must pay in excess of the policy amount. The first is where "the insurer acted in bad faith by refusing to defend its insured." *Id.* at 398, 249. The second is where there is no bad faith, but where the damages "are measured by the consequences proximately caused by the breach." *Id.*

In *Conway*, the insured was sued in a personal injury suit, and insurer paid the bodily injury liability limit—$10,000—to the injured plaintiff. However, the injured did not execute a release and the case remained pending. The insurer refused to defend the insured in the suit. The insured settled with the injured for $10,000. The insured brought suit against the insurer, but did not recover the $10,000 in excess of the policy limit. The Illinois Supreme Court affirmed, finding that the insured failed to establish that the $10,000 settlement was caused by the insurer's breach of the duty to defend.

*Conway* cited the *Reis* case and stated the following:

The mere failure to defend does not, in the absence of bad faith, render the insurer liable for that amount of the judgment in excess of the policy limits. [Citations.] Nevertheless, damages for a breach of the duty to defend are not inexorably imprisoned within the policy limits, but are measured by the consequences proximately caused by the breach.

*Id.* at 397–98 (1982) (alteration in original), quoting *Reis v. Aetna Casualty & Surety Co.*, 69 Ill.App.3d 777, 790 (1978). The *Conway* court stated that the settlement "cannot be said to have been proximately caused by [the insurer]'s breach absent a showing that there could have been a settlement for a lesser amount if [the insurer] had defended the action." *Id.* at 398, 249.

In *Delatorre*, the court discussed *Conway's* tort-based and contract-based theories of recovery for the insurer's breach of the duty to defend. According to the court in *Delatorre*, the first way an insured may recover an excess judgment in a duty to defend case is a tort-based theory, which is punitive and requires bad faith. On the other hand, a contract-based theory is compensatory, and can occur where "the insured's damages are proximately caused by the

insurer's breach of duty." *Delatorre v. Safeway Ins. Co.*, 2013 IL App (1st) 120852, ¶ 33, 989 N.E.2d 268, 275.

Ultimately, the *Delatorre* court determined that the default judgment in excess of the policy limits was proximately caused by the breach, directly flowed from the breach of contract, and was a natural consequence of the breach of contract; therefore, the court upheld the damages in excess of the policy limit. *Id.* at 275-76. Although the breach in *Delatorre* is distinguishable because the insurer provided an attorney and ignored the fact that the attorney continuously failed to provide the insured with a meaningful defense, the *Delatorre* court's discussion of damages is helpful here. For example, the court found that "[t]he plaintiff's evidence established that the original default and the subsequent default judgment both resulted entirely from the defendant's breach, and the defendant put forth no contrary evidence." *Id.* at 276. The court limited its decision "on the suitability of the default judgment entered . . . to the precise facts of this case." *Id.*

Liberty Mutual distinguishes *Delatorre* as bad faith case. Liberty Mutual argues that the default judgment did not flow from the breach but was instead a result of the Plaintiff's litigation decision to pursue a judgment. According to Liberty Mutual, the judgment would have been the same; Smith was solely liable and her liability was never in question and the injuries to Hyland were severe. Therefore, no defense would have affected the judgment amount. Also, Smith never expected Liberty Mutual to defend her and never inquired about the defense. The Defendant points out that in *Conway*, the Illinois Supreme Court stated that the settlement was not proximately caused by the breach "absent a showing that there could have been a settlement for a lesser amount if [the insurer] had defended the action." *Conway* at 398, 249. Hyland admits she never attempted to settle the case and does not contend that the judgment could have been for a

lesser amount if Liberty Mutual had not breached its duty to defend. Liberty Mutual relies upon the argument that the lack of an attorney provided by the Defendant is not what led to the default judgment.

The Plaintiff cites *Delatorre* in her argument that in the absence of bad faith, damages in excess of the policy limits are still recoverable if the amount is legally traceable to the breach. The Plaintiff argues that the breach caused the default judgment to be entered against Smith. Also, the Plaintiff maintains that the question is whether any judgment would have entered without the breach of the duty to defend, not whether a defense would have changed the judgment. The Plaintiff points out that with a successful declaratory judgment, there might not have been a default hearing on damages. The Plaintiff acknowledges that both the Defendant's theory that the judgment was inevitable and the Plaintiff's theory to the contrary "rely on speculation to some degree in the analysis." Doc. 21, p. 8.

The Plaintiff nevertheless argues that the undisputed material facts support the conclusion that the default judgment was caused by the failure to defend. For example, counsel for the Plaintiff informed Liberty Mutual and to the state court judge that he was going to proceed to a prove up of a judgment and damages. The Plaintiff argues that her counsel informed the court that he would bring a motion to seek an assignment of any cause of action against Liberty Mutual, and that Liberty Mutual failed to provide Smith with a defense. Therefore, the Plaintiff argues the facts on the record show that the default hearing happened in response to Liberty Mutual's denial of a defense.

First, the Court will briefly address bad faith. There are no allegations of bad faith in the Plaintiff's Complaint. Rather, the Plaintiff brings a breach of insurance contract and duty to defend action. (Doc. 1, p. 2). In the Motion for Summary Judgment, the Plaintiff attempts to

make a breach of duty and tort law argument. The Plaintiff implies that Liberty Mutual's confusion between the duty to defend and duty to indemnify constitutes either negligence or bad faith. (Doc. 19, p. 22-23). However, a new claim raised at the summary judgment stage is too late for the Court to consider. See *Komperda v. Hartfor Life and Accident Ins. Co.*, 2003 WL 21148023, *3 (May 14, 2003), citing *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997). Moreover, the Plaintiff does not dispute that the Complaint does not contain any allegations of negligence, bad faith, or tortious conduct on the part of Liberty Mutual. See Doc. 22, p. 16; Doc. 23, p. 1. The Court does not need to make a bad faith determination here because absent bad faith, the Defendant may nonetheless remain liable for the judgment in excess of the policy limits.

As stated above, even absent bad faith, damages for a breach of the duty to defend may be in excess of the policy limits and are "measured by the consequences proximately caused by the breach." *Conway v. Country Cas. Ins. Co.*, 92 Ill. 2d 388, 398, 442 N.E.2d 245, 249 (1982), citing *Reis v. Aetna Casualty & Surety Co.*, 69 Ill.App.3d 777, 790 (1978). Here, the Court's determination on damages is whether the breach of duty to defend proximately caused the judgment. In *Conway*, the court applied this rule to the facts of that case and determined that the settlement paid by the tortfeasor to the injured was not proximately caused by the insurer's breach "absent a showing that there could have been a settlement for a lesser amount if [the insurer] had defended the action. *Id.* at 398. The *Conway* court's determination is distinguishable from the instant case because there is a default judgment rather than a settlement. The Plaintiff claims that judgment was sought because of Liberty Mutual's breach, making the causal connection clearer.

Liberty Mutual admits that if it defended, "it would control the defense and be fully aware of any judgment entered" (Doc. 22, p. 25) and while it laments that without the Policy's sensible conditions, it "could be exposed to unforeseeable, unpredictable, and inequitable interest amounts" (*Id.* at 26), there is nothing unpredictable here. Because Liberty Mutual breached its duty to defend, the circuit judge found the damages to be $4,594,933.85. And that amount was not "unforeseeable" because due to the breach, the Plaintiff pursued a default judgment, and put the Defendant on notice that she was planning on pursuing a default judgment in the absence of a defense for Smith.

The legal question for the Court to answer is: was this consequence, a default judgment in excess of $4.5 million, proximately caused by the breach? Although the Defendant argues that Smith did nothing at the default hearing to help her case, according to the Defendant's assertions, no defense would have made a difference. Liberty Mutual also argues that if it had defended and paid the Policy limit in indemnity to satisfy the judgment, the Plaintiff would be left with the unrecoverable judgment. However, in addition to defending under a reservation of rights, the option of seeking a declaratory judgment was available to the Defendant; because the Defendant is adamant that Smith did not have permission, it is likely that the Defendant would have pursued a declaratory judgment or defended under a reservation of rights. Therefore, that argument is not persuasive. The Plaintiff has supported the contention with facts in the record that she would not have pursued the default judgment if Liberty Mutual had pursued the declaratory judgment route and limited the damages to $25,000. Due to Liberty Mutual's inaction, the Plaintiff gave Liberty Mutual notice that she would travel the default judgment route, and that the Plaintiff made this clear on the record in the underlying case.

An argument that there is a window of discretion on the question of causation certainly exists. However, the Court chooses not to force that window open when the undisputed material facts demonstrate that the Plaintiff pursued the default judgment because the Defendant provided no defense or indemnity to the driver of the car in the underlying state court personal injury case. The Plaintiff even went so far as to write Liberty Mutual a letter that stated:

> As of September 13, 2013 defendant, Miquasha A. Smith, driving a vehicle insured by Liberty Mutual Insurance Company is in default and is presently in default as no responsive pleading has been filed on behalf of Miquasha A. Smith.
>
> This office will proceed to a prove up of a judgment against Miquasha A. Smith and issue supplementary process to Liberty Mutual Insurance Company concerning coverage of the vehicle in question.

Doc. 20-5, p. 17. See also, Doc. 19, p. 21-22 (where the Plaintiff explains why Liberty Mutual's denial of a defense opened the door to a judgment becoming collectable). Whether or not the Court determines it was the default judgment itself or the amount of the judgment, the breach was the proximate cause of both.

Illinois law offers a strong remedy for insureds who are left to their own defense. See *Title Industry*, 853 F.3d at 892 ("[t]his Illinois rule of estoppel is strong stuff"). The difference between $25,000 and $4.5 million is substantial, but permissible under Illinois law, and resulted from Liberty Mutual's inaction. Liberty Mutual relied on the statement from their insured teenager that she did not give Smith permission to drive the car. Regardless of whether Liberty Mutual's credibility determination was reasonable, or whether the employees of the Defendant confused the duty to defend with the duty to indemnify, these facts do not factor into the causation analysis. The Plaintiff obtained a default judgment against Smith, the driver, and received an assignment of the judgment. The undisputed evidence shows that the Plaintiff pursued the default judgment and judgment amount because Liberty Mutual did not defend or obtain a declaratory judgment. Thus, the default judgment entered against Smith was

proximately caused by Liberty Mutual's breach, directly flowed from the breach, and was a natural consequence of the breach. The damages, therefore, are $4,594,933.85.

*C. Post-Judgment Interest*

Finally, the Parties argue the issue of interest on the judgment amount. Liberty Mutual argues that its denial of a defense did not cause the default judgment, and therefore it did not cause post-judgment interest on the judgment to accrue. Liberty Mutual also argues that the Policy provides that Liberty Mutual's defense is a condition precedent to its obligation to pay post-judgment interest. According to the Plaintiff, the judgment and the 9% Illinois statutory interest is accruing pursuant to 735 ILCS 5/2-1303 (2014). Doc. 19, p. 21. Also, the Plaintiff argues that post-judgment interest is a damage that is traceable to the breach. Damages are measured by the consequences proximately caused by the breach. This would include interest. *Conway*, 92 Ill.2d at 397-398. Accordingly, the Plaintiff is entitled to post-judgment interest on the entire judgment amount.

## Conclusion

For the reasons set forth above, the Plaintiff, Shannon Hyland's, Motion for Summary Judgment [19] is GRANTED in full. The Defendant, Liberty Mutual Fire Insurance Co.'s, Motion for Partial Summary Judgment on Damages [20] is DENIED.

Signed on this ___7___ day of _____August_____, 2017.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge